PHIL VERDONCK, Plaintiff-Appellant and Cross-Appellee, v. LES SCOPES, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—91—0584

Opinion filed April 15, 1992.

Maureen Flaherty, of Lehrer, Flaherty & Canavan, P.C., of Wheaton, for appellant.

Glen E. Berman and Thomas Wilson Waters, both of DiTommaso & Berman, P.C., of Oak Brook, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiff, Phil Verdonck, purchased a used 1984 Cadillac El Dorado from defendant, Les Scopes, in August 1987. Plaintiff subsequently filed a four-count complaint alleging that defendant had induced plaintiff to buy the car by misrepresenting the car's mileage. The complaint alleged causes of action under (1) the odometer requirements of the Federal Motor Vehicle Information and Cost Savings Act of 1972 (Federal Act) (15 U.S.C.A. §1981 *et seq.* (West 1982)); (2) the odometer certification requirements of the Illinois Vehicle Code (Illinois odometer law) (Ill. Rev. Stat. 1987, ch. 95½, par. 3—112.1); (3) the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*); and (4) common-law fraud.

After the trial court directed a verdict for defendant on the Consumer Fraud Act count, a jury found for plaintiff in the amount of $64,400 compensatory damages based on actual damages of $16,000 plus treble that amount and $37,000 punitive damages. The trial judge

reduced the compensatory damage finding to $6,100 and, pursuant to the requirements of the Federal Act (see 15 U.S.C.A. §1989(a) (West 1982)), tripled the compensatory damages to $18,300 and awarded plaintiff $18,975 in attorney fees and $912.22 in costs. Pursuant to the Consumer Fraud Act (see Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c)), the trial court awarded defendant attorney fees based on the directed verdict on the Consumer Fraud Act count. The trial court later vacated both attorney fee awards and entered judgment. Plaintiff now appeals, and defendant cross-appeals.

Plaintiff argues that (1) the trial judge erred in vacating the award of attorney fees, as such an award is mandatory under the Federal Act; and (2) the trial court erred in directing a verdict for defendant on the Consumer Fraud Act count of the complaint. Defendant claims that (1) awarding plaintiff both statutory treble damages and common-law punitive damages amounted to an impermissible double recovery; (2) the size of the punitive damage award was excessive because plaintiff put on no evidence of defendant's financial means; and (3) the trial court erred in allowing plaintiff to recover $2,400 actual damages for the cost of repairs to the car, as no evidence showed that these repairs were the result of defendant's fraudulent misrepresentations.

We hold that (1) plaintiff was entitled to attorney fees under the Federal Act; (2) plaintiff's actual damages are modified to exclude the $2,400 in repair bills; (3) the trial court properly awarded plaintiff $37,000 in punitive damages; and (4) plaintiff was not entitled to both an award of punitive damages and statutory enhancement of his actual damages. We need not and do not decide whether the trial court properly directed a verdict on the Consumer Fraud Act count.

We discuss the evidence presented at the trial only as it is necessary to an understanding of the issues on appeal. Early in August 1987, defendant purchased the automobile from Richard and Gail Newman for $10,000. At this time, the car had been driven a total of approximately 51,000 miles. About two weeks afterward, according to evidence that the jury credited, defendant sold the car to plaintiff for $13,700. In purchasing the car, plaintiff relied on the odometer reading of 28,780 miles driven. According to plaintiff, defendant did not tell plaintiff that the odometer was inaccurate and later admitted to plaintiff that he had set back the reading on the odometer. After defendant refused to rescind the purchase, plaintiff brought this action.

At the close of plaintiff's evidence, the trial court granted a directed verdict for defendant on plaintiff's Consumer Fraud Act count. The judge explained that, although defendant had attempted with partial success to sell several other automobiles late in 1987, defendant was not

an automobile dealer or otherwise in the business of selling automobiles; therefore, the Consumer Fraud Act did not apply to this single transaction.

The jury returned a general verdict for plaintiff, finding that plaintiff was entitled to $64,400 compensatory damages and $37,000 punitive damages.

Both parties filed petitions for attorney fees. The trial court initially entered an order that found that the jury's verdict clearly reflected a finding for plaintiff on the Federal and State statutory causes of action. The court found that, under the Federal Act, plaintiff was entitled to reasonable attorney fees of $18,975 and costs of $912.22, and that, under the Consumer Fraud Act, defendant was entitled to reasonable attorney fees of $2,436.50. The court incorporated the jury's verdict into the order.

Pursuant to defendant's motion, the court issued a modified judgment order. The court vacated the attorney fee award to defendant, concluding that defendant was not entitled to fees for prevailing on the Consumer Fraud Act count as plaintiff did not bring the count in bad faith.

The court also reduced the compensatory damage award from $64,400 to $18,300. The court found that defendant's alteration of the odometer caused plaintiff actual damages of $6,100, the sum of the $3,700 difference between the price plaintiff paid for the car and the car's fair-market value and the $2,400 that plaintiff paid for repairs to the car. The court tripled this $6,100 figure pursuant to the Federal Act.

The court found further that the award of $37,000 punitive damages was proper and that the directed verdict on the Consumer Fraud Act count was correct. However, the court vacated the award of attorney fees to plaintiff. The judge explained that although the amount plaintiff's attorney requested was necessary and reasonable, an award of attorney fees was not warranted in view of the $37,000 punitive damages already awarded plaintiff. Plaintiff timely appealed, and defendant timely cross-appealed.

Plaintiff argues first that the trial court lacked discretion to deny him reasonable attorney fees for his successful claim under the Federal Act. Plaintiff relies on the language of section 1989:

> "(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter *shall be liable* in an amount equal to the sum of—
>
>> (1) three times the amount of actual damages sustained or $1,500, whichever is greater; and

(2) *in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court."* (Emphasis added.) 15 U.S.C.A. §1989(a) (West 1982).

Plaintiff maintains that the foregoing language makes the award of attorney fees mandatory. He argues that similar language in the State odometer law (see Ill. Rev. Stat. 1989, ch. 95½, par. 3—112.1(e)) makes the award of fees mandatory under that statute also. We agree.

Where the language of a statute is clear, the duty of a court is to enforce the unambiguously expressed intent of the legislature. (*Norfolk & Western Ry. Co. v. American Train Dispatchers Association* (1991), 499 U.S. 117, 128, 113 L. Ed. 2d 95, 106, 111 S. Ct. 1156, 1163; *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.) The word "shall" generally indicates a mandatory legislative intent. (*Fumarolo v. Chicago Board of Education* (1990), 142 Ill. 2d 54, 96.) There is no reason to deviate from this rule in the present case, as courts have recognized that awarding attorney fees to successful plaintiffs is necessary to encourage the diligent pursuit of claims often involving only a small amount of actual damages. (*Duval v. Midwest Auto City, Inc.* (D. Neb. 1977), 425 F. Supp. 1381, 1388, *aff'd* (8th Cir. 1978), 578 F.2d 721.) Almost without exception, therefore, courts have concluded that a plaintiff who prevails under the Federal Act is *entitled* under section 1989(a)(2) to reasonable attorney fees. See, *e.g., Haluschak v. Dodge City of Wauwatosa, Inc.* (7th Cir. 1990), 909 F.2d 254, 258; *Duval*, 578 F.2d at 726; *Force v. McGeachy* (1988), 186 Ga. App. 781, 786, 368 S.E.2d 777, 781-82; *Kostel Funeral Home, Inc. v. Duke Tufty Co.* (S.D. 1986), 393 N.W.2d 449, 452; *Rice v. Mike Ferrell Ford, Inc.* (W. Va. 1991), 403 S.E.2d 774, 777.

Defendant argues, however, that in *Hall v. Riverside Lincoln Mercury—Sales, Inc.* (1986), 148 Ill. App. 3d 715, 721, this court held that whether to award attorney fees under the Federal Act is within the discretion of the trial court. In *Hall*, this court upheld the trial court's award of fees after the plaintiff successfully moved for summary judgment. We held that such a result was "successful action" within the meaning of section 1989(a)(2) of the Federal Act. In noting at the outset of the discussion of this issue that the award of fees was within the trial court's discretion, *Hall* cited *Hathcock v. G & M Builders, Inc.* (5th Cir. 1979), 601 F.2d 846, 851, an opinion that did indeed so state. However, the statement in *Hathcock* was *dictum* and was unsupported by any discussion of the statutory language or citation to authority. Moreover, in upholding the amount of fees awarded, *Hall* cited the reasoning of *Duval* that mandatory fee awards to successful plaintiffs are a neces-

sary part of the Federal Act. (*Hall*, 148 Ill. App. 3d at 722.) Other courts have cited *Hall* as authority that fee awards under section 1989(a)(2) of the Federal Act are mandatory rather than discretionary. *Force*, 186 Ga. App. at 786, 368 S.E.2d at 781; *Rice*, 403 S.E.2d at 777.

■■ We conclude that, under the relevant provisions of both the Federal Act (15 U.S.C.A. §1989(a)(2) (West 1982)) or the Illinois odometer law (Ill. Rev. Stat. 1989, ch. 95½, par. 3—112.1(e)(2)), the trial court is required to award attorney fees when the statutory conditions have been met. There is nothing in either statute conditioning the award of fees on the absence of punitive damages; indeed, as we shall discuss, the statutes themselves mandate punitive awards in the form of treble damages. Thus plaintiff is entitled to attorney fees of $18,975.

Plaintiff's second argument on appeal is that the trial court erred in directing a verdict for defendant on the count of his complaint alleging that defendant violated the Consumer Fraud Act. Plaintiff argues that defendant need not be either an automobile dealer or one engaged in a pattern of commercial activity to be liable under this statute, as it was in force at the time of the transaction, for his fraudulent misrepresentations in connection with this particular sale. Plaintiff also asserts that, even if defendant may not be held liable for an isolated transaction, the evidence at trial showed that defendant dealt in used cars sufficiently to be engaged in "trade or commerce" (see Ill. Rev. Stat. 1987, ch. 121½, par. 261(f)), and thus to be liable for his deception and fraud (see Ill. Rev. Stat. 1987, ch. 121½, par. 262).

■ We decline to decide this issue as it has absolutely no practical significance in the present case. A reviewing court need not pass on abstract questions the resolution of which will not affect the outcome of the litigation. (*Barth v. Reagan* (1990), 139 Ill. 2d 399, 419; *Russell v. Good Shepherd Hospital* (1991), 222 Ill. App. 3d 140, 146-47.) Plaintiff's complaint advanced four bases for holding defendant liable for the same fraudulent conduct; three of these bases went to the jury, which awarded plaintiff both actual and punitive damages. The trial court refused to award defendant fees under the Consumer Fraud Act, and defendant has not appealed that decision. We thus cannot discern how plaintiff could benefit from a reversal of the directed verdict on this particular count. In the context of this appeal, that count is simply redundant.

We now turn to defendant's cross-appeal. Defendant attacks the award of damages in three respects. For clarity, we deal first with defendant's argument that the award of $37,000 in punitive damages was excessive. Defendant argues that because plaintiff introduced no evidence of defendant's financial condition or ability to pay punitive dam-

ages, it was improper to award plaintiff punitive damages in excess of that which would deter or punish an individual without pecuniary resources. We disagree.

Defendant relies foremost on *Mullin v. Spangenberg* (1884), 112 Ill. 140. In *Mullin*, the defendant in a civil trespass action attempted to introduce evidence of his meager economic resources in order to lessen the award of damages against him. However, it was not completely clear whether the damages awarded were entirely compensatory or in part punitive. The supreme court held that he was not entitled to introduce such evidence where the plaintiff had not initially raised the issue of the defendant's wealth in order to enhance the damages. The court stated:

> "Where a plaintiff entitled to vindictive damages offers no evidence of the defendant's wealth with a view of enhancing them, he in effect says, 'I ask no damages against the defendant except as a mere individual, without any regard to his property or estate, whether it be much or little,'—and in that kind of a case the jury have no right to give any more damages than they would if it had affirmatively appeared the defendant was without pecuniary resources." 112 Ill. at 145-46.

Defendant also invokes *Black v. Iovino* (1991), 219 Ill. App. 3d 378, in which the Appellate Court, First District, relied in part on *Mullin* to reduce a punitive damage award from $20,000 to $1,000, an amount appropriate against a defendant without pecuniary resources. *Black* reasoned that under *Mullin* the plaintiff had the right not to introduce evidence of the defendant's financial resources and thus the right to foreclose the defendant from doing so. However, having elected not to do so, the plaintiff could not receive damages in excess of those available against an impecunious defendant.

The Illinois Supreme Court has not explicitly overruled *Mullin*. However, we believe that in *Deal v. Byford* (1989), 127 Ill. 2d 192, it implicitly overruled or disapproved that part of *Mullin* on which defendant relies. In *Deal*, the plaintiff recovered punitive damages of $25,000. On appeal, the defendants challenged the award as excessive, in part because the plaintiff introduced no evidence of their financial resources. Without specifically citing *Mullin*, the supreme court held:

> "Contrary to the defendants' assertion, the absence of any evidence regarding their financial status does not mean that the jury's award must be set aside. Evidence regarding the financial status of a defendant is simply one relevant consideration to be weighed by the judge or jury in determining an appropriate award of punitive damages. The plaintiff was not required to

present such evidence, and the defendants made no attempt to do so." 127 Ill. 2d at 204-05.

■ This language plainly states that a plaintiff who introduces no evidence of the defendant's financial circumstances is not thereby limited to a minimal level of punitive damages. (See also *Jines v. Seiber* (1990), 193 Ill. App. 3d 390, 394 (applying rule that plaintiff is not required to introduce evidence of defendant's financial status and upholding award of $6,500 against defendant who argued that the award was excessive).) *Black* does not distinguish *Deal*, and we believe that its holding on this issue is inconsistent with the higher authority of our State's supreme court. We therefore hold that plaintiff was not required to introduce evidence of defendant's financial circumstances to recover the punitive damage award here.

■ We agree with defendant, however, that plaintiff may not recover both punitive damages and statutory treble damages, as such a dual award amounts to double recovery, or double punishment, for the same wrongful behavior. We thus vacate the award of treble damages and hold that plaintiff instead is entitled to actual damages, punitive damages, and attorney fees and costs.

Both the statutory enhancement of actual damages and the common-law remedy of punitive damages serve the same functions: to punish and deter certain types of especially wrongful behavior by assessing damages in excess of those necessary to compensate the plaintiff for the harm he has actually suffered. (*Deal v. Byford* (1989), 127 Ill. 2d 192, 203; *Turnbull & Turnbull v. ARA Transportation, Inc.* (1990), 219 Cal. App. 3d 811, 826, 268 Cal. Rptr. 856, 865.) To award both statutory treble damages and common-law punitive damages for the same act is therefore an impermissible double recovery or excessive penalty. *Turnbull & Turnbull*, 219 Cal. App. 3d at 827, 268 Cal. Rptr. at 865; *Stoner v. Houston* (1979), 265 Ark. 928, 933, 582 S.W.2d 28, 30-31; *Bill Terry's Inc. v. Atlantic Motor Sales, Inc.* (Fla. App. 1982), 409 So. 2d 507, 509; *Eastern Star, Inc. v. Union Building Materials Corp.* (Haw. App. 1985), 712 P.2d 1148, 1159-60; *Bjorgen v. Kinsey* (N.D. 1991), 466 N.W.2d 553, 562; *Wagoner v. Bennett* (Okla. 1991), 814 P.2d 476, 479; *John Mohr & Sons, Inc. v. Jahnke* (1972), 55 Wis. 2d 402, 411, 198 N.W.2d 363, 368.

The Federal Act does not preempt causes of action for common-law fraud based on odometer tampering or misrepresentation. (*Edgar v. Fred Jones Lincoln-Mercury of Oklahoma, Inc.* (10th Cir. 1975), 524 F.2d 162, 165-66; *Bill Terry's*, 409 So. 2d at 509.) The Illinois odometer law is patterned on the Federal Act, and nothing in that statute indicates an intention to preempt preexisting causes of action for common-

law fraud. In any event, defendant has not argued that either statute preempts common-law fraud actions. The proper remedy here is to award plaintiff his actual damages plus the punitive damages, as the total award here is larger than the treble damages under the Federal Act. See *Turnbull & Turnbull*, 219 Cal. App. 3d at 826, 268 Cal. Rptr. at 865; *Eastern Star*, 712 P.2d at 1159-60; *Bill Terry's*, 409 So. 2d at 509.

Defendant's final claim of error involves the amount of compensatory damages plaintiff is entitled to receive. Defendant concedes that plaintiff is entitled to $3,700, representing the difference between what plaintiff paid for the car and the car's fair-market value. However, defendant argues that plaintiff is not entitled to the additional $2,400 that represents plaintiff's expenditures for repairs to the car. Defendant argues that plaintiff did not establish that these outlays were attributable to defendant's fraudulent acts.

Plaintiff responds that the trial court specifically found that the repair expenses were the consequence of the odometer fraud; that defendant did not object to the introduction of the repair bills; and that plaintiff's testimony established that at least certain repairs for which plaintiff paid out of his own pocket would have been covered by warranty had the car's mileage been as low as defendant represented to plaintiff. We conclude that plaintiff did not establish that any of his repair bills were recoverable.

We agree with the parties that the proper measure of damages in this case is that set out in *Beachy v. Eagle Motors, Inc.* (N.D. Ind. 1986), 637 F. Supp. 1093. There the plaintiff purchased an automobile for $7,150. The defendant told the plaintiff that the car had 33,274 miles on it; the actual figure was over 75,000 miles. The court adopted the reasoning of *Duval v. Midwest Auto City, Inc.* (D. Neb. 1977), 425 F. Supp. 1381, 1388, *aff'd* (8th Cir. 1978), 578 F.2d 721, that "actual damages" under section 1989(a) of the Federal Act should have the meaning commonly applied in fraud cases. Actual damages thus have two components: (1) the difference between what the plaintiff paid for the car and the fair-market retail value of a car purchased with the number of miles actually traveled; and (2) such outlays as are legitimately attributable to the defendant's acts. *Beachy*, 637 F. Supp. at 1094-95.

The court in *Beachy* awarded the plaintiff damages under the first prong of its test but denied him any damages under the second prong even though the plaintiff produced numerous bills for repairs done on the car after he purchased it. Although the court acknowledged that repair bills can be part of a defrauded purchaser's actual damages, it held that in this case the plaintiff had not shown that the repairs would not have been needed had the car actually had the mileage indicated by the

odometer. The court explained that the risk of extra repair expense is already factored into the relatively low-market price of a car with greater previous use. Thus, a purchaser is already compensated for added repairs caused by normal wear and tear. However, a purchaser is entitled to recover for the cost of any repair that he can prove would not have been incurred had the mileage been as the seller had represented. The plaintiff in *Beachy* made no such showing. Thus, although both his repair bills and the disparity between the actual and represented mileages were substantial, he was entitled to no damages for the cost of repair.

We believe that a similar result must obtain here. Plaintiff did not make the specific showing required by the *Beachy* test. Plaintiff argues that the repairs would have been covered by the manufacturer's warranty had the mileage been as defendant represented and that his expenditures are thus the result of defendant's misrepresentations. This argument is sound in principle but lacks support in the record. Plaintiff himself testified that of all his repairs, only work involving the catalytic converter would have been covered by the warranty. There is no evidence of what, if any, cost plaintiff incurred as the result of any repair work on the catalytic converter. Also, the manufacturer's warranty is not included in the record. We must agree with defendant that the trial court lacked a proper basis to conclude that plaintiff incurred his repair expenses as a result of defendant's odometer fraud. We therefore reverse that part of the damage award.

In sum, plaintiff is entitled to $3,700 in actual damages, $37,000 in punitive damages, $912.22 in court costs, and attorney fees of $18,975. Pursuant to Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we enter an order to that effect.

The judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

DUNN and McLAREN, JJ., concur.