VARTIKA DUBEY, Plaintiff-Appellee and Cross-Appellant, v. PUBLIC STORAGE, INC., *et al.*, Defendants-Appellants and Cross-Appellees.

First District (5th Division)   No. 1—09—0094

Opinion filed October 23, 2009.—Rehearing denied November 24, 2009.

344

Richard T. Greenberg, Donald C. Pasulka, and Susan E. Groh, all of McGuire Woods, LLP, of Chicago, for appellants.

Goggin & Associates, of Oak Brook (Terrence J. Goggin, John F. Goggin, and Brendan M. Burns, of counsel), for appellee.

JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff Vartika Dubey filed suit against Public Storage, Inc., Metropublic Storage Fund, and PS Illinois Trust (collectively "Metropublic" or "defendant") to recover damages she incurred arising out of the loss of her personal property from a storage unit. Dubey claimed that such loss was the result of an alleged breach of contract, a conversion, and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/10a (West 2002)) on the part of Metropublic. The jury returned a verdict for plaintiff on all three claims. Metropublic now appeals alleging that the trial court erred by (1) granting plaintiff three recoveries for a single injury, (2) granting plaintiff damages in excess of the contractual limitation provision, (3) finding liability on the Act claim based on Metropublic's negligence, (4) improperly awarding plaintiff punitive damages, and (5) granting attorney fees pursuant to the Act claim. On cross-appeal, Dubey urges this court to increase her compensatory damages award. For the following reasons, we affirm as modified and remand for a reduction of certain damages.

## I. BACKGROUND

On September 14, 2002, Dubey entered into a rental agreement with Metropublic for the rental of a storage unit. Dubey was shown to her new storage unit by an employee of Metropublic and was shown how to open and lock the storage unit. Metropublic has a policy of locking vacant units with their own locks. Dubey signed and initialed the rental agreement, which contained provisions stating that the aggregate value of all personal property stored in the unit would not exceed $5,000 and that Metropublic's total liability for any loss would not exceed $5,000. The provisions stated in pertinent part:

"3. USE OF PREMISES AND PROPERTY AND COMPLIANCE WITH LAW. Occupant shall store only personal property that belongs to Occupant. Because the value of the personal property may be difficult or impossible to ascertain, Occupant agrees that under no circumstances will the aggregate value of all personal property stored in the Premises exceed, or be deemed to exceed, $5,000 and may be worth substantially less than $5,000.
    ***

5. LIMITATION OF OWNER'S LIABILITY; INDEMNITY. Occupant shall indemnify, defendant, and hold Owner and Owner's Agents harmless from and Loss incurred by Owner or Owner's Agents in any way arising out of Occupant's use of the Premises or the Property. Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause will not exceed a total of $5,000.

* * *

9. TERMINATION AND DEFAULT. Owner may terminate this Rental Agreement at the expiration of any term by giving written notice to Occupant by certified mail not less than seven (7) days before expiration of the term, or two (2) days if Occupant is in default under the Rental Agreement. *** If Occupant defaults under any of his obligations under this Rental Agreement, Owner may pursue any remedies available to Owner under applicable law or this Rental Agreement."

Dubey alleged in her complaint that she stored over $150,000 worth of personal property in her storage unit. Her rent was always paid on time and current, yet her property was sold at public auction by Metropublic without any notice to Dubey. Dubey alleged breach of contract, conversion, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, in her second amended complaint.

Defendant responded that it satisfied all the requirements of the Self-Service Storage Facility Act (770 ILCS 95/1 *et seq.* (West 2002)), and therefore Dubey was barred from bringing her action. Defendant

also claimed that Dubey, in violation of the terms of the rental agreement, stored her personal property in a storage unit other than the one shown on her rental agreement, which bars her from bringing this action. Additionally, defendant filed a counterclaim for breach of contract alleging that Dubey, after initialing the provisions in the rental agreement which prohibited storage of items worth over $5,000, stored property valued in excess of $5,000, heirlooms, and valuable or irreplaceable property.

At the jury trial on the breach of contract and conversion claims, the following evidence was presented. Dubey was interested in renting a storage unit so her husband contacted Metropublic. The next day, Dubey went to Metropublic and spoke to Lisa Jarock, the property manager. She told Jarock that she wanted a bigger unit because she wanted to store bigger items in it like a refrigerator, washer, dryer, dishwasher, and a basketball hoop, among other things. Dubey was not informed by Jarock at that time about any limitation on the value of the property to be stored. After choosing the size of her rental unit, which was the larger of the two shown to her, Dubey left the storage facility to pick her daughters up from school. Upon her return, Jarock presented her with a rental agreement to sign. Jarock put the rental agreement on the counter and briefly explained what each paragraph meant, then pointed to the space for Dubey to place her initials. It took less than five minutes for Jarock to explain the contract to Dubey, and Dubey testified that she did not have time to read every part of the contract. Dubey further testified that Jarock did not stress or point out that she could not store more than $5,000 worth of property in a unit. Jarock only told Dubey that Metropublic would not cover damages for theft or flood.

Dubey testified that she did not look at the unit number on the rental agreement and that it was not stressed to her by Jarock. Dubey signed up to pay her rent automatically through her credit card each month. After signing the rental agreement, Jarock led Dubey to unit E-11, removed the Metropublic lock that was there, and put Dubey's lock, which she had purchased from Metropublic, on the unit. Dubey then asked Jarock how she would be able to find the unit next time she came. Dubey's daughter pointed out a small statue of a gnome near the unit, and Jarock agreed that the gnome would be a good way for Dubey to remember her unit's location.

A day or two later, Dubey arrived at her storage unit with a moving truck and unloaded her personal belongings. Dubey returned to her unit at least twice a week through October, a couple times in November, and at least once in December. In early February of 2003, Dubey visited her storage unit with her husband. She tried to unlock

it, but it would not open. She went to the office and spoke to Victoria Kitchen, the former property manager. Kitchen asked where her unit was and when Dubey told her, she stated that such unit was not hers. She then accompanied Dubey back to the unit. Dubey explained that the unit was the same one she had been coming to since September of 2002, and she pointed to pieces of broken plastic from her television that were outside of the unit. Kitchen removed the Metropublic lock that was on the unit and opened it. The unit was empty except for some broken pieces of Dubey's daughters' toys.

Kitchen told Dubey that her property had been auctioned off. She told Dubey that her rent had not been paid and that Metropublic records showed that there was $191 in past-due rent for unit E-11. However, unit E-11 was rented to someone by the name of Maria Cruz, and Dubey's rental agreement showed that her unit was C-10. Cruz's rental agreement had a computer-generated designation of unit number E-12. Such unit number had been scratched out and next to it, handwritten, was the number E-11. The initials "L.J." were next to it.

Dubey explained that her rent was automatically paid through her credit card each month. Kitchen told Dubey her belongings had been auctioned off in January. Dubey asked what they would have done with her pictures and paperwork, which consisted of baby pictures, wedding pictures, accounting and paperwork, and graduation certificates. Kitchen told Dubey that they probably threw them out, but then would not tell Dubey where the garbage was when she asked.

The items auctioned, including a refrigerator, washer, dryer, bikes, lawnmower, television, and jewelry, had a market value of $99,145.

Evidence was presented as to Metropublic's general policies as well. If a mistake was made on a rental agreement, such as a change of a rental unit number, a manager was permitted to scratch something out and initial it, but a tenant was not required to initial it as well. A property manager could make changes without consulting a superior. Metropublic was aware of more than one instance where a tenant put her property in a unit different from that which appeared on the rental agreement.

At trial, the jury returned verdicts in favor of Dubey for both breach on contract and conversion, in the amount of $5,000 each. Dubey was awarded punitive damages for conversion in the amount of $745,000.

The trial court tried count III of Dubey's complaint, alleging a violation of the Illinois Consumer Fraud Act, without a jury. On June 16, 2008, the court found in favor of Dubey and awarded her compensatory damages in the amount of $69,145, and punitive dam-

ages in the amount of $207,435. The court further awarded attorney fees and costs to Dubey in the amount of $185,849.34.

Metropublic and Dubey both filed a series of posttrial motions, all of which were denied by the trial court. Metropublic now appeals; Dubey cross-appeals.

## II. ANALYSIS

On appeal, Metropublic argues that (1) the trial court erred by awarding Dubey three times for one loss, (2) the trial court erred by granting damages in excess of $5,000, (3) the trial court's judgment in favor of plaintiff for consumer fraud should be reversed, (4) the trial court erred by awarding punitive damages, and (5) the trial court erred by granting attorney fees for work performed prior to the time that the consumer fraud count was added to Dubey's complaint.

On cross-appeal, Dubey argues that the jury's compensatory damages award should be increased.

### A. Triple Recovery

■ Defendant's first contention on appeal is that the trial court erred in awarding Dubey damages for all three of her claims: breach of contract, conversion, and violation of the Act. Defendant contends that all three of the claims were predicated upon the same loss, namely, Dubey's loss of property, and that in general plaintiffs are only entitled to one recovery per loss. Dubey responds that the determination of damages by a trial court should not be set aside unless it is manifestly erroneous and that Metropublic failed to argue that here.

At the close of trial, the jury awarded Dubey $5,000 in compensatory damages on her breach of contract claim and $5,000 in compensatory damages on her conversion claim. Subsequently, the trial court awarded her $69,145 in compensatory damages on her violation of the Act claim. A plaintiff may plead and prove multiple causes of action, though she may obtain only one recovery for an injury. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 486 (1998). We therefore find that Dubey could only recover damages for one of her two claims at the jury trial: either breach of contract or conversion. Accordingly, pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we reduce the jury's award of compensatory damages to one award of $5,000, based on the conversion claim. The compensatory damages on the violation of the Act claim can remain, however. See *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 235 Ill. App. 3d 70, 72-73 (1992) (affirming a trial judge's award of $1,155 in compensatory damages on a conversion claim, as well as $750 compensatory damages for violation of the Consumer Fraud Act); *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1029

(1997) (trial court awarded actual damages of $1,000 on conversion count, and $1,000 in actual damages for violation of the Act). On remand, the trial court is instructed to enter an order reflecting reduction of compensatory damages to this amount.

## B. Damages in Excess of $5,000

Defendant next contends that awarding Dubey damages in excess of $5,000 on the Act claim was in error. Metropublic argues that the provision in the rental agreement limiting Dubey's damages to $5,000 was valid and enforceable, contrary to the trial court's findings. Dubey responds that Metropublic waived its right to challenge the trial court's findings regarding the limitation provision as unenforceable, and that even if such right was not waived, the provision was against Illinois public policy and Metropublic cannot use their contract as a defense.

We first address Dubey's argument that Metropublic has waived the right to raise this issue on appeal because it was raised for the first time in a posttrial motion. Dubey notes that the trial court's decision finding the limitation provision of the rental agreement to be an exculpatory clause and void for public policy reasons in violation of the Landlord and Tenant Act (765 ILCS 705/0.01 (West 1998)), was issued on May 8, 2007. The jury trial began in April of 2008. Defendant never filed a motion *in limine* asking to present evidence of the limitation provision, never objected to the Landlord and Tenant Act's application at trial, and never raised this issue in subsequent pleadings. Illinois courts have found that a party " 'cannot sit on his hands and let perceived errors into the record' " and " '[then] complain of those errors for the first time in a post-trial motion.' " *Moller v. Lipov*, 368 Ill. App. 3d 333, 342 (2006) (where an issue forfeited on appeal where the defendants never filed a motion *in limine* regarding their expert's qualifications, never objected to his qualifications during trial, and never raised the issue in their motion for a directed verdict; raising the issue for the first time in a posttrial motion), quoting *Taluzek v. Illinois Central Gulf R.R. Co.*, 255 Ill. App. 3d 72, 82 (1993).

A primary purpose of the waiver rule is to ensure that the trial court has the opportunity to correct the perceived error. *Lipov*, 368 Ill. App. 3d at 342. A trial court cannot correct the error and prevent prejudice when the objection is not made as the error occurs. *Lipov*, 368 Ill. App. 3d at 342. Moreover, we note that prior to trial, Dubey filed a motion *in limine* to bar any testimony concerning the $5,000 limitation. In its response, Metropublic stated it had no intention of violating the court's order of May 8, 2007. Had Metropublic raised this issue at that time, the trial court could have addressed it and cor-

rected it, if needed, prior to trial. Accordingly, where the record reveals that defendant failed to object to the trial court's finding at trial, we find that this issue has been forfeited on appeal.

However, even if we were to find that Metropublic did not waive this issue, we would nevertheless find that the trial court properly found that the Landlord and Tenant Act invalidated the $5,000 damages limitation provision. Metropublic contends that the Landlord and Tenant Act does not apply to Metropublic's rental agreement because it was not a landlord, Dubey was not a tenant, and there was no residential lease involved. Metropublic further contends that even if the Landlord and Tenant Act applies, it does not void the provision at issue.

■ Although defendant did not specifically define the relationship of the parties as lessor and lessee in the rental agreement, "[i]n the absence of contractual language to the contrary, laws and statutes in existence at the time the contract is executed are considered part of the contract." *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 341 Ill. App. 3d 14, 18-19 (2003). At the time of the execution of the rental agreement, the Landlord and Tenant Act stated:

> "Every covenant, agreement or understanding in or in connection with *** any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, *** in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable." 765 ILCS 705/1 (West 1998).

Here, defendants argue that the Landlord and Tenant Act only applies to a landlord-tenant relationship and a residential lease and thus does not apply to a commercial self-storage facility. We disagree. Prior to an amendment that was added to the Landlord and Tenant Act on August 16, 2005, it applied to nonresidential leases. Accordingly, since Dubey entered into a rental agreement with Metropublic for the rental of real property, over which she had exclusive possession for the duration of the contract, the Landlord and Tenant Act applied. See also *Jewelers*, 341 Ill. App. 3d at 19-20 (finding that a safety deposit box in a bank was "real property" and that the Landlord and Tenant Act applied because the bank was a lessor and the party that rented the safety deposit box was the lessee).

■ Defendant maintains, however, that even if the Landlord and Tenant Act applied, it would not invalidate the provision at issue here. The Landlord and Tenant Act states that an agreement in connection with a lease of real property for damages resulting from the negligence

352

of the lessor shall be deemed void. Defendant argues that because the provision does not exempt Metropublic from liability completely, and because Dubey is not suing for negligence, the Landlord and Tenant Act does not invalidate the agreement. Dubey responds, relying on *Economy Mechanical Industries, Inc. v. T.J. Higgins Co.*, 294 Ill. App. 3d 150 (1997), that the right to recover under the Landlord and Tenant Act is not limited only to negligence claims.

In *Economy*, this court addressed the problem with Metropublic's argument in regard to Dubey only being able to recover pursuant to a negligence claim. This court explained that "where a lessor has multiple tenants and uses a standardized lease containing an exculpatory provision, such provision would be void only as to those tenant claims asserting negligence, but not those tenant claims arising under the lease. We do not believe the same lease provision can be simultaneously void and not void." *Economy*, 294 Ill. App. 3d at 153. Similarly here, we do not believe that the provision at issue is void only as to negligence, but not to any of the other claims Dubey raised under the lease. Accordingly, we find that the provision at issue was void as to all of Dubey's claims.

Alternatively, however, Metropublic argues that the damages limitation provision is valid and enforceable and that a similar limitation clause has been construed and enforced on at least three separate occurrences. Dubey responds that the limitation provision is unconscionable and violates Illinois public policy. We agree with Dubey.

Contractual limitations are generally held valid in Illinois, unless it would be against the settled public policy of the state to do so or there is something in the social relationship between the parties militating against upholding the agreement. *First Financial Insurance Co. v. Purolator Security, Inc.*, 69 Ill. App. 3d 413, 417 (1979). As we have just discussed, the Landlord and Tenant Act voids exculpatory provisions in leases because they are against public policy. Accordingly, there is a legislative directive to the contrary, and thus the contractual limitation at issue is not valid.

■ Moreover, the rental agreement at issue is unconscionable. A contract is deemed unconscionable when it is "improvident, oppressive, or totally one-sided." *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 191 (1983). Unconscionability has two facets: one that is procedural and one that is substantive. *Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1147 (2004). Procedural unconscionability consists of some sort of impropriety during the process of forming the contract which deprives a party of a meaningful choice. *Zobrist*, 354 Ill. App. 3d at 1147. " 'Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract

was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability.' " *Zobrist*, 354 Ill. App. 3d at 1147, quoting *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90 (1980). On the other hand, substantive unconscionability " 'relates to situations where a clause or term in a contract is allegedly one-sided or overly harsh.' " *Zobrist*, 354 Ill. App. 3d at 1147, quoting *Bishop v. We Care Hair Development Corp.*, 316 Ill. App. 3d 1182, 1196 (2000).

■ In the case at bar, Dubey testified that Jarock had printed out the contract for her to sign when she arrived from picking up her children at school. Jarock took approximately five minutes to go through the provisions with her and had her initial each one. Dubey did not have time to read every part of the contract, and Jarock never stressed or pointed out that she could only store up to $5,000 worth of personal property in her storage unit, despite knowing that Dubey planned on storing a washer and dryer, a refrigerator, a basketball hoop, and other large items in the larger unit she had picked. Rather, Jarock only said that Metropublic was not liable for theft or flood damage. These facts support a finding of unconscionability. For the foregoing reasons, we find that the limitation provision was invalid.

### C. Illinois Consumer Fraud Act

Defendant's next argument on appeal is that the trial court's finding that Metropublic violated the Illinois Consumer Fraud Act was against the manifest weight of the evidence. The appropriate standard of proof for a statutory fraud claim is preponderance of the evidence. *Hanson-Suminksi v. Rohrman Midwest Motors, Inc.*, 386 Ill. App. 3d 585, 592 (2008). A proposition proved by a preponderance of the evidence is one that has been found to be more probably true than not true. *Hanson-Suminski*, 386 Ill. App. 3d at 592.

■ To state a cause of action under the Illinois Consumer Fraud Act, five elements must be proven: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (2006). A material fact exists where a buyer would have acted differently knowing the information or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether

to purchase. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 505 (1996). Furthermore, a plaintiff's actual reliance is not required, but a plaintiff must show that defendant's consumer fraud proximately caused their injury. *Connick*, 174 Ill. 2d at 501.

■ For the first element, Dubey contends that the trial court properly found that defendant violated the Act because its business practices were unfair. Illinois courts determine whether conduct is unfair under the Act on a case-by-case basis. *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313 (1996). The requirements for unfair conduct are: (1) whether the practice offends public policy; (2) whether it is oppressive; and (3) whether it causes consumers substantial injury. *Saunders*, 278 Ill. App. 3d at 313. A practice can be unfair without meeting all three criteria of unfairness. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 418 (2002). Rather, a practice may be unfair because of the degree to which it meets one of the criteria or because to a less extent it meets all three. *Robinson*, 201 Ill. 2d at 418. Here, we find that Dubey proved unfairness by a preponderance the evidence.

In *Demitro v. General Motors Acceptance Corp.*, 388 Ill. App. 3d 15, 20 (2009), an employee of General Motors discovered that plaintiff's vehicle had been wrongly repossessed. Rather than return the vehicle and allow plaintiff to pay $2,202.54 and bring his account current as set forth under the terms of the extension letter, the employee decided to retain possession of the vehicle until plaintiff paid off the entire outstanding balance of $39,695.04. *Demitro*, 388 Ill. App. 3d at 20. The court found that General Motors' conduct was oppressive and therefore unfair because it left plaintiff with only two options: to pay the entire outstanding balance or lose his vehicle. *Demitro*, 388 Ill. App. 3d at 20-21. The court further found that plaintiff suffered substantial injury because his credit rating was damaged and he ultimately lost the use of his vehicle. *Demitro*, 388 Ill. App. 3d at 21.

■ Similarly here, Metropublic's conduct was oppressive where Dubey was never served with a notice of lien or notice as to the auction sale of her property. Upon finding out that Metropublic had wrongfully auctioned off all of her property, Dubey was unable to recover for damages she suffered because there were no procedures or policies in place for such a loss. As a result, Dubey suffered substantial injury by the permanent loss of valuable property. We find that Metropublic's conduct was unfair.

■ Moreover, we find that this was not a simple breach of contract case since Metropublic's actions sufficiently implicated consumer protection concerns. Metropublic, despite knowing what Dubey intended to store in her storage unit, never explicitly informed her

that the property stored could not exceed $5,000. Additionally, Metropublic admitted to altering other contracts in the past and not requiring a tenant signature for changes made to a rental agreement. Accordingly, we find that this pattern of misconduct implicates consumer protection concerns. See *Central Diversey M.R.I. Center, Inc. v. Medical Management Sciences, Inc.*, 952 F. Supp. 575, 577 (N.D. Ill. 1996) (a pattern of practice or policy of breaching contracts implicates consumer protection concerns). For the foregoing reasons, we find that it is possible for a trier of fact to have found by the preponderance of the evidence that defendant violated the Act.

## D. Punitive Damages

Defendant's next contention is that the trial court erred by awarding punitive damages. Specifically, Metropublic argues that the jury's finding of punitive damages on the conversion claim was against the manifest weight of the evidence; that the trial court's additional award of punitive damages on the Act claim was improper; and the punitive damages award was grossly excessive. Dubey responds that the punitive damages award was proper and supported by the evidence.

### i. Conversion Award Against the Manifest Weight of the Evidence

In reviewing a trial court's decision to award punitive damages, this court takes a three-step approach, considering: "(1) whether punitive damages are available for the particular cause of action, using a *de novo* standard; (2) whether, under a manifest weight of the evidence standard, the defendant or defendants acted fraudulently, maliciously or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages." *Caparos v. Morton*, 364 Ill. App. 3d 159, 178 (2006). In this case, the trial court awarded Dubey $745,000 in punitive damages pursuant to the conversion claim, and $207,435 in punitive damages pursuant to the Act claim.

As to the first consideration, it is undisputed that punitive damages are available for conversion. See *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114 (1998) (it is undisputed that in Illinois the tort of conversion may under proper circumstances support an award of punitive damages).

As to the second consideration, Metropublic argues that the jury's determination of punitive damages on the conversion conviction was against the manifest weight of the evidence because Dubey failed to prove that Metropublic's conduct was willful or wanton. Punitive damages for the tort of conversion properly lie where the defendant acts willfully or with such gross negligence to indicate a wanton disregard of the rights of others. *Turner v. Firstar Bank, N.A.*, 363 Ill.

App. 3d 1150, 1160 (2006). In this case, the jury's conclusion that the conduct of Metropublic in this case warranted punitive damages is not against the manifest weight of the evidence. To the contrary, the evidence presented showed that Metropublic rented Dubey a unit that had already been rented to another person, changed the unit number on the contract Dubey signed, failed to instruct Dubey not to store more than $5,000 worth of property in her storage unit, failed to correct the mistake after speaking with Cruz, and proceeded to auction off all of Dubey's belongings without notifying her. Accordingly, ample evidence was available to support the conclusion that Metropublic acted willfully or with such gross negligence to indicate a wanton disregard of the rights of others, and the jury's determination that the conduct of Metropublic warranted punitive damages is not against the manifest weight of the evidence.

Lastly, under the third step, we do not find that the trial court abused its discretion in assessing punitive damages in this case. A trial court does not abuse its discretion unless no reasonable person could assume its view. *Caparos*, 364 Ill. App. 3d at 180. We find that a reasonable person could find that Dubey deserved an award of punitive damages on the conversion claim. Accordingly, the trial court did not abuse its discretion in awarding such damages.

### ii. Punitive Damages Under the Act

■ Metropublic's next argument is that the trial court's award of an additional $207,435 of punitive damages on the Act claim was against the manifest weight of the evidence and constituted an improper supplement of the punitive damages awarded by the jury.

### a. Against the Manifest Weight of the Evidence

Again, in reviewing a trial court's decision to award punitive damages, we take a three-step approach, considering: "(1) whether punitive damages are available for the particular cause of action, using a *de novo* standard; (2) whether, under a manifest weight of the evidence standard, the defendant or defendants acted fraudulently, maliciously or in a manner that warrants such damages; and (3) whether the trial court abused its discretion in imposing punitive damages." *Caparos*, 364 Ill. App. 3d at 178. In this case, the trial court awarded Dubey $207,435 in punitive damages pursuant to the Act claim.

As to the first consideration, it is undisputed that punitive damages are available for a violation of the Consumer Fraud Act. See 815 ILCS 505/10a(a) (West 2002) (the court, in its discretion, may award actual economic damages or any other relief which the court deems proper for a consumer fraud claim).

Turning to the second fact, we review the trial court's reasons for imposing punitive damages to determine if its judgment that defendants acted fraudulently, maliciously, or in a manner warranting punitive damages was contrary to the manifest weight of the evidence. The trial court relied on the following evidence in making its determination that punitive damages were warranted for the Act claim: that Metropublic was indifferent to Dubey's loss of property, that Metropublic was unwilling to take steps to determine what occurred during the course of this situation, that the corporate policy exhibited a lack of care for what occurred in Dubey's situation, that there may have been trickery or deceit as the case progressed, and that Metropublic limited the value of stored items to $5,000 yet encouraged people to rent a large unit knowing full well such people had a substantial amount of property. We find that the trial court's award of punitive damages on the above bases was not against the manifest weight of the evidence.

Under the third step, we do not find that the trial court abused its discretion in assessing punitive damages in this case. A trial court does not abuse its discretion unless no reasonable person could assume its view. *Caparos*, 364 Ill. App. 3d at 180. We find that a reasonable person could find that Dubey deserved an award of punitive damages on the Act claim. Accordingly, the trial court did not abuse its discretion in awarding such damages.

### b. Improper Supplement

Metropublic argues, relying on *Verndock v. Scopes*, 226 Ill. App. 3d 484, 491 (1992), that where punitive damages are assessed twice for the same conduct, it is an impermissible double recovery or excessive penalty. In *Verndock*, the court found that the plaintiff could not recover both punitive damages and statutory treble damages for common law consumer fraud, as such dual award amounted to a double punishment for the same wrongful behavior. The court vacated the award of treble damages and held that the plaintiff was instead entitled to "actual damages, punitive damages, and attorney fees and costs." *Verndock*, 226 Ill. App. 3d at 491. The case at bar is inapposite where here the punitive damages were for two separate convictions: one for conversion, and one for violating the Act. We are therefore unpersuaded by Metropublic's reliance on *Verndock*.

Metropublic, however, also points to *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162 (2008), and *Ciampi v. Ogden Chrysler Plymouth, Inc.*, 262 Ill. App. 3d 94 (1994), to support the proposition that in other cases where a jury awarded punitive damages on a common law claim, the trial court declined to grant additional punitive damages on the

Act claim. In *Gehrett*, the court found that plaintiff was entitled to judgment on three alternative theories of liability, but was not entitled to actual damages on all three, where there is only one injury. *Gehrett*, 379 Ill. App. 3d at 175-76. Here, the argument is regarding punitive damages, not actual damages. Metropublic points to the language at the beginning of the opinion in *Ciampi*, which reads:

> "A jury returned a verdict in favor of Ciampi on the common-law fraud count and awarded $5,000 in compensatory damages and $100,000 in punitive damages. *** The Consumer Fraud Act claim was not tried to the jury, and the trial court took it under advisement and thereafter entered judgment in favor of Ciampi. The trial court awarded $35,070 in attorney fees to Ciampi under the Consumer Fraud Act claim." *Ciampi*, 262 Ill. App. 3d at 96-97.

This language is again inapposite to the case at bar where punitive damages were awarded based on a conversion claim and an Act claim; not on a common law fraud claim and an Act claim. Moreover, courts have specifically held that punitive damages can be awarded on two different judgments. See, *e.g.*, *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 81 (1994) (reinstating punitive damages for both breach of fiduciary duty and violations of the Act). Accordingly, we find that the punitive damages awards in this case for both conversion and violations of the Act were proper.

### iii. Excessive Damages

Metropublic next takes issue with the amount of punitive damages awarded against it on both the conversion claim and the Act claim. Metropublic raises two arguments regarding the amount of damages awarded: a common law argument that the amounts are grossly excessive and an argument that the awards are unconstitutional. With regard to the first argument, to determine whether an award is excessive in a given case, Illinois courts look to a fact-specific set of relevant circumstances including: "(1) the nature and enormity of the wrong, (2) the financial status of the defendant, and (3) the potential liability of the defendant." *Turner v. Firstar Bank, N.A.*, 363 Ill. App. 3d 1150, 1161 (2006). "The highly factual nature of the assessment of punitive damages dictates that a great amount of deference should be afforded the determination made at the trial court level, and to reflect that deference and the highly factual nature of the determination, we review the assessment of punitive damages on a manifest-weight-of-the-evidence standard." *Turner*, 363 Ill. App. 3d at 1161-62. "A judge['s] or jury's assessment of punitive damages will not be reversed unless the manifest weight of the evidence shows that the assessment was so excessive as to demonstrate passion, partiality, or corruption on the part of the decision-maker." *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1145 (2004).

In the case at bar, the nature of the enormity of the wrong was great. Metropublic was in a superior position to know the occupants of the storage units, yet it altered the contracts and placed Dubey's items in a storage unit that had been rented to someone else, it auctioned off all of Dubey's items despite Dubey having paid her rent on time and in full every month, and it did not take any steps to compensate Dubey for her loss after learning of its wrongdoing.

The financial status of the defendant is important and relevant because an amount sufficient to punish one individual may be trivial to another. *Ciampi*, 262 Ill. App. 3d at 113. The amount of the award "should send a message loud enough to be heard but not so loud as to deafen the listener." *Hazelwood v. Illinois Central Gulf R.R.*, 114 Ill. App. 3d 703, 713 (1983). We believe the award here was sufficient to punish Metropublic for its conduct and to deter it and others from similar conduct in their future transactions with customers. Therefore, we affirm the award of punitive damages.

With regard to defendant's second argument concerning the amount of damages assessed against it, we review *de novo* whether a punitive damages award is constitutional. *Turner*, 363 Ill. App. 3d at 1162. We consider three guideposts as we review awards of punitive damages: "(1) the degree of the reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Turner*, 363 Ill. App. 3d at 1162-63.

To determine reprehensibility, reviewing courts consider: "(1) whether the harm caused was physical as opposed to economic, (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others, (3) whether the target of the conduct had financial vulnerability, (4) whether the conduct involved repeated actions or was an isolated incident, and (5) whether the harm was the result of intentional malice, trickery, deceit, or mere accident." *Turner*, 363 Ill. App. 3d at 1163. Here, the harm caused was economic rather than physical. Metropublic's conduct did not evince an indifference to or a reckless disregard of the health or safety of others. However, Dubey was financially vulnerable, as she had placed valuable property in a storage unit in defendant's control. Furthermore, defendant admitted to changing contracts in the past and wrongfully auctioning off others' property in the past. And finally, the trial court found that while there may not have been intentional malice or trickery at the outset of the incident in question, there may have been subsequently when defendant did not contact the person

who bought Dubey's items, when it had no policy in place to compensate a person who had his or her property wrongfully auctioned, and when defendant would not tell Dubey where the trash was so she could look for personal items that had been thrown out. We find that such conduct was reprehensible.

■■■ The second guidepost is the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award. While there is no bright-line ratio that a punitive damages award cannot exceed, the United States Supreme Court has suggested that, in practice, "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425, 155 L. Ed. 2d 585, 605-06, 123 S. Ct. 1513, 1524 (2003). On the other hand, ratios greater than those may comport with due process if a particularly egregious act has resulted in only a small amount of economic damages. *Turner*, 363 Ill. App. 3d at 1164. In the case at bar, the compensatory damages for conversion amounted to $5,000, while the punitive damages for conversion were $745,000, a ratio of 149 to 1. The compensatory damages for violation of the Act were $69,145, and the punitive damages were $207,435, a ratio of 3 to 1.

The final guidepost is the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Defendant points to two cases. In *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill. App. 3d 461 (2007), the court upheld an award of $5,230.54 in compensatory damages and $4,769.46 in punitive damages where a towing company wrongfully towed the plaintiff's vehicle. In *International Union of Operating Engineers, Local 150 v. Lowe Excavating Co.*, 225 Ill. 2d 456 (2006), the court found that $325,000 in punitive damages were excessive where the compensatory damages were $4,680 in a case where a union picketed the excavating company's work site with placards that contained false information.

On the other hand, Dubey relies on *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003), as a comparable case. In *Mathias*, the plaintiffs alleged that defendant hotel was allowing its guests to be attacked by bed bugs while charging upwards of $100 per day. The jury awarded plaintiffs $5,000 in compensatory damages and $186,000 in punitive damages, a ratio of over 37 to 1. The reviewing court upheld the award, stating that the punitive damages should be proportional to the wrongfulness of defendant's actions. *Mathias*, 347 F.3d at 676. The court found that the defendant's behavior was outrageous and that the compensable harm was difficult to quantify because

a large element of it was emotional. *Mathias*, 347 F.3d at 676-77. Similarly here, we find that Dubey's compensable damage was difficult to quantify because the property auctioned off or thrown out consisted partly of wedding photos, baby pictures, and documents with emotional value that were irreplaceable.

■ Applying the three guideposts, we conclude that the misconduct in this case supports an award of punitive damages. However, we are concerned by the punitive damages for conversion at a ratio of 149 to 1. Therefore, we remand this issue for a new trial on damages for the conversion claim.

### E. Attorney Fees

■ Defendant's final argument on appeal is that the trial court erred by granting attorney fees for work performed prior to the time the Act claim was added to Dubey's complaint. Dubey responds that fees incurred for work on non-Act claims may be recovered when the claims are so inextricably intertwined and cannot be distinguished, as they are here.

Our standard of review is whether the trial court abused its discretion in rendering its judgment for fees. *Schorsch v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 286 Ill. App. 3d 1028, 1031 (1997). While there is no common law right to recover attorney fees and costs, the Consumer Fraud Act provides that the trial court may award fees to a prevailing party. See 815 ILCS 505/10a(c) (West 2002). However, plaintiffs may also recover fees incurred for work on non-Act claims when the Act claim is so inextricably intertwined with the non-Act claims that it cannot be distinguished. *Ardt v. State*, 292 Ill. App. 3d 1059, 1067 (1997). Here, we find that the conversion and breach of contract claims were based on the same evidence and the time spent on each issue could not be distinguished. See *Ciampi*, 262 Ill. App. 3d at 115. Accordingly, we affirm the trial court's award of attorney fees.

### F. Cross-Appeal: Compensatory Damages Inadequate

■ On cross-appeal, Dubey alleges that her compensatory damages for conversion, in the amount of $5,000, was inadequate because the fair market value of the property she lost was $99,145. We note that plaintiff has the burden of proving damages to a reasonable degree of certainty. Generally, the measure of damages for conversion of personal property is the market value of the property at the time and place of conversion plus legal interest. *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill. App. 3d 915, 933 (1981). Here, Dubey submitted evidence that the market value of her property was $99,145.

Moreover, a party who materially breaches a contract cannot take advantage of the terms of the contract which benefit him, nor can he

recover damages from the other party to the contract. *Goldstein v. Lustig*, 154 Ill. App. 3d 595, 599 (1987). Here, the contract limitation provision, which was found to be invalid, limited the liability of Metropublic to $5,000. Metropublic cannot limit Dubey's compensatory damages based on such invalid contract provision.

Accordingly, we remand this issue to the trial court for a trial on compensatory damages for the conversion conviction.

### III. CONCLUSION

For the foregoing reasons, we affirm as modified the judgment of the circuit court of Cook County and remand for the trial court to reduce the amount of compensatory damages from the jury to $5,000, and hold a new trial on both compensatory and punitive damages for conversion.

Judgment affirmed as modified; cause remanded.

TOOMIN and HOWSE, JJ., concur.