2021 IL App (1st) 192410
Opinion filed: February 5, 2021

FIRST DISTRICT
Fifth Division

No. 1-19-2410

| | | |
|---|---|---|
| CASCADE BUILDERS CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2018 L 10235 |
| | ) | |
| JOHN RUGAR, d/b/a Jack Rugar Painting, UTICA | ) | Honorable |
| FIRST INSURANCE COMPANY, and BENJAMIN | ) | John H. Ehrlich, |
| MOORE & COMPANY, | ) | Judge, presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Utica First Insurance Company, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Interstate Fire & Casualty Company, | ) | |
| | ) | |
| Respondent-Appellee). | ) | |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal involves an attempt to enforce a foreign subpoena, issued by a court in the state of New York with respect to litigation pending in that state, pursuant to the Uniform Interstate Depositions and Discovery Act (Act) (735 ILCS 35/1 *et seq.* (West 2018)). Specifically, petitioner-appellant, Utica First Insurance Company (Utica), appeals from an order dismissing this matter after the circuit court had previously granted, in part, a motion to quash a foreign subpoena *duces tecum* (subpoena) served pursuant to the Act upon an Illinois company and a nonparty to the New York litigation, respondent-appellee, Interstate Fire & Casualty Company (Interstate). For the following reasons, we affirm.

¶ 2    Because it is extensive, we summarize here only that portion of the factual background of this matter necessary for our resolution of this appeal.

¶ 3    In 2011, Craig and Constance Weatherup hired Cascade Builders Corporation (Cascade), a company domiciled in the state of New York, to complete repairs to their upstate New York residence. Cascade in turn allegedly entered into an agreement with John Rugar, d/b/a Jack Rugar Painting (Rugar), also based in New York, to perform work on the residence as a subcontractor. Ultimately, the Weatherups claimed that their residence was damaged by the work performed by Rugar, during which Rugar allegedly used a defective product manufactured by Benjamin Moore & Company (Benjamin Moore).

¶ 4    The Weatherups thereafter allegedly sought to recover for the damage to their residence by making a claim with Cascade and its insurer, Interstate. In 2014, Interstate paid the Weatherups $590,749.04 to settle this claim. In exchange, the Weatherups executed a general release of their claims against Cascade and Interstate, as well as an "Assignment of Claim for Damages Agreement" in which they assigned to Cascade and Interstate any claim for damages they might have against—*inter alia*—Benjamin Moore, Rugar, and Rugar's insurer, Utica. The Weatherups agreed to cooperate and further agreed that any resulting verdict against or settlement with Benjamin Moore, Rugar, or Utica would be paid to Cascade and Interstate.

¶ 5    In 2016, Cascade filed a lawsuit in New York against Rugar, Utica, and Benjamin Moore (Cascade Builders Corp. v. Rugar, No. 2014-389 (N.Y. Sup. Ct. Franklin County)). With respect to Rugar and Benjamin Moore, Cascade's claims were made individually and as assignee of the Weatherups. Cascade's lawsuit also claimed it was named as an additional insured under the policy Utica issued to Rugar and sought damages for Utica's improper denial of coverage for damage to the Weatherups' residence under theories of breach of contract, estoppel, and bad faith.

¶ 6    It is in connection with this lawsuit that the subpoena at issue here was originally issued. Specifically, in September 2018, a subpoena was issued in New York requiring Interstate to provide Utica with certified copies of any insurance policies Interstate issued to Cascade in 2011, as well as:

"The entirety of the claims file and/or subrogation file maintained by Interstate as respects claim number 00511879855 and/or any other claim number associated with any claim arising out of work performed at a residence *** reportedly owned by Craig and/or Constance Weatherup, including but not limited to all notice[s] of claim, investigation, photos, statements, draft and/or final reports of consultants."

The subpoena further provided as follows:

"The reason such disclosure is required is that, based upon a release dated May 13, 2014, Interstate paid Craig and/or Constance Weatherup, the sum of $590,749.04 on behalf of Cascade for damage which is alleged to have occurred in June and July, 2011. Based on the deposition testimony of Reed J. Abbott, the owner of plaintiff Cascade Builders Corp., ('Cascade'), taken on April 26, 2018, no claim had ever been made against Cascade by the Weatherups for any alleged damage to their house. Therefore, said payment was voluntary and gratuitous, and is not recoverable from Utica First Insurance Company."

¶ 7    On September 20, 2018, Utica filed this subpoena in the circuit court of Cook County, Illinois, seeking to have it served upon Interstate with the imprimatur of an Illinois court pursuant to the Act (735 ILCS 35/1 *et seq.* (West 2018)). The present case was opened in the circuit court to address that request, and the subpoena was subsequently served upon Interstate, which responded by filing a motion to quash. Therein, Interstate contended that Utica's subpoena (1) was overly broad and sought irrelevant material, in that it sought the entirety of Interstate's claim files,

including subrogation documents and documents created after Interstate paid the Weatherups to settle their claim against Cascade, and (2) improperly sought material subject to attorney-client, work-product, insured-insurer, and common-interest privileges under Illinois law.

¶ 8     Thereafter, the parties extensively litigated the propriety of Interstate's assertions of privilege, including issues related to Utica's claim that New York law granted it greater right to obtain the material it sought from Interstate than the law of Illinois and that under choice-of-law principles New York law should be applied. During this litigation, the circuit court conducted an *in camera* inspection of the documents Interstate claimed were privileged, and Interstate ultimately provided Utica the vast majority of the documents it originally claimed to be privileged (including all but 92 of the original 690 pages of documents at issue). The only remaining dispute involved items identified in an amended privilege log as "consultant documents," an "internal evaluation of investigative materials," and a "[d]etailed report from counsel."

¶ 9     After Interstate had provided all the remaining documents for which it had originally claimed a privilege, the circuit court dismissed this matter in an order entered on October 25, 2019. In the report of proceedings for the hearing held that day, as well as in the order itself, the circuit court stated that in conducting its *in camera* review of the documents and in resolving the issues of privilege, it had applied Illinois law "according to the statute." Utica timely appealed.

¶ 10    On appeal, Utica contends that the circuit court erred by applying Illinois law to resolving Interstate's claims of privilege, as opposed to ordering the production of the entirety of Interstate's claim file as was purportedly required under the law of New York.

¶ 11    We begin by considering and interpreting the language of the Act itself. The rules applicable to this task are well established and were outlined in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

"The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation."

We review questions of statutory construction *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003).

¶ 12    In 2015, the Act was adopted in Illinois. Pub. Act 99-79 (eff. Jan. 1, 2016) (adding 735 ILCS 35/1 *et seq.*). The Act is designed to provide a uniform system of interstate discovery procedure "that can be easily and efficiently followed, that has a minimum of judicial oversight and intervention, that is cost-effective for the litigants, and is fair to the deponents." Nat'l Conference of Comm'rs on Unif. State Laws, Uniform Interstate Depositions and Discovery Act, Prefatory Note, at 4 (2007), https://my.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=f67a712b-0585-c0be-3e71-0523c8de4089 [https://perma.cc/MZ7J-NWTL].

¶ 13    Section 3 of the Act provides that "[w]hen a party submits a foreign subpoena to a clerk of court in this State, the clerk, in accordance with that court's procedure, shall promptly issue a subpoena for service upon the person to which the foreign subpoena is directed." 735 ILCS 35/3(b) (West 2018). In turn, section 6 of the Act provides that

"[a]n application to the court for a protective order or to enforce, quash, or modify a subpoena issued by a clerk of court under Section 3 must comply with the rules or statutes

of this State and be submitted to the court in the county in which discovery is to be conducted." *Id.* § 6. The plain language of the Act thus indicates that applications to quash a foreign subpoena issued pursuant thereto—such as the motion to quash filed by Interstate at issue in this matter—are to "comply with the rules or statutes of this State." *Id.* From this plain language, it appears that the legislature generally intended Illinois's rules and statutes to govern an application to quash any foreign subpoena issued pursuant to the Act.

¶ 14    To the extent that there is any ambiguity with respect to the scope of this provision, we turn to the committee comments to the Act provided by the National Conference of Commissioners on Uniform State Laws. See *People v. Ross*, 168 Ill. 2d 347, 352 (1995) ("When a statute is ambiguous, it is appropriate to look to other sources to ascertain legislative intent. [Citation.] One such source is the committee comments to the statute, which, although not binding upon this court, are persuasive authority.").[1] With respect to section 6 of the Act, the uniform committee comments state as follows:

> "The act requires that any application to the court for a protective order, or to enforce, quash, or modify a subpoena, or for any other dispute relating to discovery under this Act, must comply with the law of the discovery state. Those laws include the discovery state's procedural, evidentiary, *and conflict of laws rules*. Again, the discovery state has a significant interest in protecting its residents who become non-party witnesses in an action pending in a foreign jurisdiction from any unreasonable or unduly burdensome discovery

---

[1]"Although the uniform committee comments were not expressly adopted by the Illinois legislature, we believe they are nonetheless relevant and applicable in determining the meaning and application of the Act in this case." *Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 558 (2000).

requests, and this is easily accomplished by requiring that any discovery motions must be decided under the laws of the discovery state. This protects the deponent by requiring that all applications to the court that directly affect the deponent must be made in the discovery state.

*** 

*Evidentiary issues that may arise, such as objections based on grounds such as relevance or privilege, are best decided in the discovery state under the laws of the discovery state (including its conflict of laws principles).*" (Emphases added.) Nat'l Conference of Comm'rs on Unif. State Laws, Uniform Interstate Depositions and Discovery Act, § 6, cmt. at 9 (2007), https://my.uniformlaws.org/HigherLogic/System/ DownloadDocumentFile.ashx?DocumentFileKey=f67a712b-0585-c0be-3e71- 0523c8de4089 [https://perma.cc/MZ7J-NWTL].

¶ 15    From the language of the Act itself and the uniform committee comments with respect thereto, it is thus evident that—at a minimum—the choice-of-law principles of this state should apply to the question of whether Illinois or New York substantive law should apply to Interstate's motion to quash Utica's subpoena. We therefore turn to the choice-of-law issue.

¶ 16    Under Illinois law, a court's choice-of-law analysis begins:

" 'by isolating the issue and defining the conflict.' [Citations.] A choice-of-law determination 'is required only when a difference in law will make a difference in the outcome.' [Citations.] The party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome. [Citation.] Once a conflict between laws is established, the analysis turns to which law should be applied. [Citation.] We review *de novo* a circuit

court's decision on a choice of law issue." *Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co.*, 2014 IL 116389, ¶ 14.

¶ 17    As such, before proceeding to an ultimate choice-of-law determination, it is Utica's initial burden to establish a conflict between Illinois and New York law that would make a difference as to the question of whether the remaining 92 pages of documents at issue are in fact privileged. We find that Utica has failed to meet that initial burden.

¶ 18    To begin with, we note that on appeal Utica concedes that the remaining documents at issue would be privileged under Illinois law. Therefore, it is only if Utica can meet its burden to show that a different result would obtain under the law of New York that any further choice-of-law analysis would be required.

¶ 19    Utica attempts to meet this burden by first citing the general proposition under New York's statutory law providing that, with respect to discovery "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by" "any other person, upon notice stating the circumstances or reasons such disclosure is sought or required." N.Y. C.P.L.R. § 3101(a)(4) (McKinney 2014). Utica then cites a number of decisions it contends stand for the proposition that, in New York, the contents of an insurer's claim file created prior to a decision to deny coverage are "presumptively discoverable" and "when a first-party insurer pays a claim for damages sustained by its insured, as Interstate did here, and a suit is then brought seeking to recover from the alleged tortfeasor, the insurer must disclose to the defendant tortfeasor the material contained within its claim file."

¶ 20    However, we do not find the cases cited by Utica actually support its argument, where they primarily involve a situation not presented here: *i.e.*, insurance coverage litigation between an insurer and its own insured regarding the scope of coverage, where both the insurer and the insured

were parties to the litigation. See *Advanced Chimney, Inc. v. Graziano*, 60 N.Y.S.3d 210 (App. Div. 2017); *148 Magnolia, LLC v. Merrimack Mutual Fire Insurance Co.*, 878 N.Y.S.2d 727 (App. Div. 2009); *Brooklyn Union Gas Co. v. American Home Assurance Co.*, 803 N.Y.S.2d 532 (App. Div. 2005); *Bombard v. Amica Mutual Insurance Co.*, 783 N.Y.S.2d 85 (App. Div. 2004); *Karta Industries, Inc. v. Insurance Co. of the State of Pennsylvania*, 685 N.Y.S.2d 685 (App. Div. 1999); *Bertalo's Restaurant Inc. v. Exchange Insurance Co.*, 658 N.Y.S.2d 656 (App. Div. 1997); *Westhampton Adult Home, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 481 N.Y.S.2d 358 (App. Div. 1984); *Firemen's Insurance Co. of Newark, N.J. v. Gray*, 342 N.Y.S.2d 501 (App. Div. 1973); *Millen Industries, Inc. v. American Mutual Liability Insurance Co.*, 324 N.Y.S.2d 930 (App. Div. 1971).

¶ 21    While Utica also cites *Roman Catholic Church of the Good Shepherd v. Tempco Systems*, 608 N.Y.S.2d 647, 648 (App. Div. 1994), that case did not involve the actual disclosure of an insurer's claim file but rather an order

> "directing plaintiffs to respond to the defendants' notices of discovery and inspection requiring plaintiffs to provide written authorizations for the release of, *inter alia*, the records of non-party insurers and/or adjusters pertaining to insurance claims made and subsequently paid to the plaintiffs for the fire loss sustained on their property which forms the basis for the underlying action."

The exact nature of the underlying action is not clear from the five-paragraph opinion. Moreover, what is clear from the opinion is that the order requiring such written authorizations was affirmed because New York courts are "generally precluded from inquiring into the propriety of discovery requests, where, as here, the plaintiffs have failed to timely seek a protective order" under New York law. *Id.* Here, Interstate filed a motion to quash.

¶ 22 More importantly, our own review of New York law reveals that Utica's argument that the contents of an insurer's claim file is "presumptively discoverable" ignores contrary authority. Specifically, Utica's argument ignores that New York statutory law with respect to discovery also provides that "[u]pon objection by a person entitled to assert the privilege, privileged matter shall not be obtainable" (N.Y. C.P.L.R. § 3101(b) (McKinney 2014)), and that:

> "materials otherwise discoverable under subdivision (a) of this section and prepared in anticipation of litigation or for trial by or for another party, or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer or agent), may be obtained only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation" (*Id.* § 3101(d)(2)).

¶ 23 Consistent therewith, we note several New York cases—outside the context of coverage litigation—holding that "[d]ocuments in an insurer's claim file that were prepared for litigation against its insured are immune from disclosure." *McClier Corp. v. United States Rebar, Inc.*, 885 N.Y.S.2d 599 (App. Div. 2009); *1415, LLC v. New York Marine & General Insurance Co.*, 121 N.Y.S.3d 118, 119 (App. Div. 2020) (same); *Grotallio v. Soft Drink Leasing Corp.*, 468 N.Y.S.2d 4, 5 (App. Div. 1983) (same). This even includes documents made by a "defendant's liability insurer in *contemplation* of litigation." (Emphasis added.) *DiNova v. Sunnyview Hospital & Rehabilitation Center*, 517 N.Y.S.2d 410, 411 (Sup. Ct. 1987). As the *DiNova* court explained:

> "It has been long established that 'once an accident has arisen there is little or

nothing that the insurer or its employees do with respect to an accident report except in contemplation and in preparation for eventual litigation or for a settlement which may avoid the necessity of litigation' [citation]. Since the purpose of liability insurance is the defense and settlement of claims, the insurer's file is accorded conditional immunity against discovery [citation]." *Id.*

¶ 24 These aspects of New York law are not cited to suggest that such privileges would necessarily apply to this matter under the law of that state. Rather, we simply intend to establish as untenable Utica's broad conclusions that, under New York law, the contents of an insurer's claim file are "presumptively discoverable" and "when a first-party insurer pays a claim for damages sustained by its insured, as Interstate did here, and a suit is then brought seeking to recover from the alleged tortfeasor, the insurer must disclose to the defendant tortfeasor the material contained within its claim file."

¶ 25 As these assertions form the sole basis for Utica's arguments, we find that Utica has failed to meet its initial burden to show that a different result would be obtained under the law of New York, such that any further choice-of-law analysis would be required. The circuit court therefore properly applied the substantive law of this state to resolve Interstate's claims of privilege. Because Utica concedes that the remaining, undisclosed documents are privileged under Illinois law, we must affirm.

¶ 26 Indeed, we would still affirm even if Utica had shown that New York law was substantively different than the law of Illinois on this issue. A choice-of-law analysis is not a purely academic exercise, as to meet its initial burden Utica must demonstrate not just a conflict of law but one that will actually make a difference in the outcome. See *Bridgeview Health Care Center, Ltd.*, 2014 IL 116389, ¶ 14. However, we cannot make this determination here, as the remaining, undisclosed

documents have not been included in the record on appeal for our review.

¶ 27　　Utica, as the appellant, had the duty to provide a record sufficient to review its claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of a complete record, we must presume that a circuit court's order conformed with the law and had a sufficient factual basis. *Id.* at 392. Further, where the record is inadequate, we will resolve any doubts against the appellant. *Id.*.

¶ 28　　Even where a party is not privy to materials reviewed *in camera* and found to be privileged from discovery, that party can request the circuit court to submit those materials under seal for appellate review. *Bocock v. Will County Sheriff*, 2018 IL App (3d) 170330, ¶ 42. Utica did not do so here. Where such privileged documents are not provided to the appellate court for review, we must affirm pursuant to *Foutch*. *Id.* ¶ 43; *Foutch¸* 99 Ill.2d at 391-92; *Fauley v. Metropolitan Life Insurance Co.*, 2016 IL App (2d) 150236, ¶ 60.

¶ 29　　For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 30　　Affirmed.

**No. 1-19-2410**

| | |
|---|---|
| **Cite as:** | *Cascade Builders Corp. v. Rugar*, 2021 IL App (1st) 192410 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-10235; the Hon. John H. Ehrlich, Judge, presiding. |
| **Attorneys for Appellant:** | Eileen M. Letts and Brian J. Beck, of Zuber Lawler & Del Duca LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Todd M. Rowe and Dibora L. Berhanu, of Tressler LLP, of Chicago, for appellee. |