2021 IL App (1st) 200974-U

No. 1-20-0974

Second Division
September 7, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| | ) | Appeal from the |
| GABRIELA FLORES, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 M 52885 |
| | ) | |
| LUXURY MOTORS CREDIT, INC. and | ) | |
| MUAYAN QADAR, | ) | Honorable |
| | ) | Thomas W. Murphy |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's judgment is affirmed where the court did not err in entering a default judgment against defendants.

¶ 2    This appeal stems from plaintiff Gabriela Flores' purchase of a 2017 Dodge Journey SUV

from defendant Luxury Motors Credit, Inc. (Luxury Motors), a car dealership in Bridgeview,

Illinois. Flores brought suit against Luxury Motors and defendant Muayan Qadar, a Luxury Motors

salesman, alleging that defendants fraudulently induced her into purchasing a vehicle without all-wheel drive, a feature she claims to have informed defendants that she desired. The circuit court ultimately awarded Flores a default judgment in the amount of $32,909.02 and allowed her to retain the SUV she purchased. Defendants now appeal, arguing that the judgement was excessive and against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     The following facts are taken from the limited record on appeal and the parties' briefs.

¶ 5     On January 3, 2019, Flores visited Luxury Motors with the intent to purchase a vehicle. According to Flores, she repeatedly "made it clear" to defendant Qadar, the salesman with whom she dealt, that she wanted a vehicle with all-wheel drive and low mileage. Also according to Flores, Qadar and other Luxury Motors employees assured her that a particular 2017 Dodge Journey met her specifications. Flores purchased the vehicle for $19,100 cash.

¶ 6     "A few days later," Flores discovered the vehicle she purchased did not have all-wheel drive. She "promptly returned" to Luxury Motors and demanded that they exchange her vehicle for one with all-wheel drive. Aziz Khan, Luxury Motors' general manager, informed Flores that he could not exchange the vehicle until the title paperwork was processed by the Illinois Secretary of State. Flores returned to Luxury Motors again "a couple weeks" later and was told that Khan would contact her when new vehicles arrived.

¶ 7     On March 4, 2019, having not heard back from Khan, Flores' attorney sent Luxury Motors a letter demanding that they exchange her vehicle for one with all-wheel drive and pay $500 in attorney fees. After Luxury Motors declined to do so, Flores' attorney sent an arbitration demand to the American Arbitration Association (AAA) per an arbitration provision in the purchase documents. However, the AAA refused to administer the arbitration, citing a previous matter in

which Luxury Motors "did not timely submit its share of the filing fees and/or failed to waive a provision in its consumer contract that the AAA identified as a material and substantial deviation from the Protocol."

¶ 8    Upon hearing back from the AAA, Flores filed a three-count complaint against defendants in the circuit court of Cook County on April 19, 2019. Count I alleged that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)) by causing her to purchase the vehicle in question by misrepresenting the type of drivetrain it had. Flores also alleged that defendants' misrepresentations in this regard were "willful or intentional and done with evil motive or reckless indifference to the rights of others." Counts II and III alleged fraud in the inducement and revocation of acceptance, respectively. As relief, Flores requested recission of her purchase, a refund for the purchase price of the vehicle, compensatory damages, costs, attorney fees, "[p]unitive damages due to Defendants' willful and wanton conduct," and "[a]ny and all other just and appropriate relief." Defendants were served with the complaint and summonses on May 13, 2019.

¶ 9    On June 4, 2019, Flores filed her first motion for a default judgment against defendants, noting that only Qadar had filed an appearance (which was *pro se*) and that neither Qadar nor Luxury Motors had responded to the complaint. The circuit court entered an order holding defendants in default and scheduling a prove-up hearing for July 25, 2019. At the July 25 hearing, an attorney appeared on behalf of both defendants and requested additional time to respond to the complaint. The circuit court issued an order stating that Flores had withdrawn her default motion in light of the attorney's appearance and that defendants would have until August 22, 2019 to respond to the complaint.

¶ 10     On August 21, 2019, defendants filed a motion to dismiss. Specifically, defendants argued that Flores had not provided any evidence that she requested an all-wheel drive vehicle, and even if she had made such a request, it was "[w]aived" when she signed documents for the purchase of a non-all-wheel drive vehicle. After a hearing at which both sides were present through counsel, the court denied defendants' motion and ordered them to answer the complaint by November 15, 2019.

¶ 11     However, defendants did not file an answer until November 27, 2019. That same day, Flores filed a renewed motion for default based on defendants' untimely answer and failure to respond to written discovery requests. On December 6, 2019, the circuit court entered an order stating that Flores again withdrew her motion for default, this time based on defendants' agreement to respond to discovery by December 27. Accordingly, the court's order stated that "[b]y agreement, defendants must respond to plaintiff's written discovery by 12/27/19."

¶ 12     Flores then filed a second renewed motion for default on January 9, 2020, citing defendants' failure to comply with the court's order to respond to discovery. On January 14, 2020, the court entered an order stating that Flores' second renewed default judgement was granted "[w]ithout objection" following a hearing at which defendants were present through counsel. A prove-up hearing was set for February 11, 2020.[1]

¶ 13     On February 11, the court entered an order stating that a prove-up hearing was held at which defendants were not present. After hearing Flores' evidence and argument, the court entered

---

[1] On February 10, 2020, the day before the prove-up hearing, defendants' counsel filed a petition to withdraw from the case due to a "breakdown of communication" in the attorney-client relationship. However, counsel did not serve the petition on Flores or notice it for hearing, and continued to represent defendants until he again petitioned to withdraw on July 6, 2020, well after the final judgment was rendered.

a default judgment against defendants in the amount of $32,909.02, allocated as follows: $7500 in compensatory damages, $10,000 in punitive damages, $14,430 in attorney fees, and $979.02 in costs. The order also noted that the prove-up evidence was heard without a jury because claims under the Consumer Fraud Act are not triable by a jury.

¶ 14     On March 3, 2020, defendants filed a motion to vacate the February 11 judgment and set the matter aside for arbitration. The motion is extremely short, cites no authority, and develops no legal argument. Rather, the motion reads in its entirety:

> "NOW COMES THE DEFENDANTS, Exotic Motors [*sic*] and Muayan Qader (Collectively known as 'Defendant'), and moves this Honorable Court to vacate the judgment of February 11, 2020. In support of its motion, Plaintiff states the following:
>
> > 1. Defendant was present [*sic*] at last hearing, but hearing went forward.
> >
> > 2. The date of this motion is filed within 30 days of the Default Order.
> >
> > 3. Defendant has tendered all documentation for discovery to Plaintiff (See Attached Exhibit A).
> >
> > 4. As part of the documentation for discovery, the parties have previously agreed to enter into binding arbitration, and not a court hearing.
> >
> > 5. Defendant shall not receive irreconcilable harm if order is vacated for Court.
>
> WHEREFORE, Defendant prays for this Honorable Court to dismiss the Order of January 31, 2020 [*sic*] and allow Defendant to establish their case, as well as enter any other order this Court deems just."

¶ 15     That same day, defendants also filed a "Motion to Return Vehicle," arguing that Flores was "benefitting double" and "beingly unjustly enriched" because she was allowed to keep the vehicle

she originally purchased despite receiving money damages. Consequently, defendants asked the circuit court to enter an ordering requiring Flores to return the vehicle to them.

¶ 16    Flores filed a combined motion in opposition to defendants' motions on March 10, 2020. On August 20, 2020, after several pandemic-related delays, the circuit court denied defendants' motions following a hearing attended by attorneys for both sides.

¶ 17    On September 15, 2020, defendants filed a notice of appeal identifying the circuit court's August 20, 2020 order as the challenged judgment. Defendants also filed another notice of appeal on September 16, 2020, this time listing the court's February 11, 2020 order as the challenged judgment.

¶ 18                                II. ANALYSIS

¶ 19                                A. Jurisdiction

¶ 20    As a preliminary issue, we first address Flores' motion to dismiss this appeal for lack of jurisdiction, which we have taken with the case. In that motion, Flores argues that (1) defendants' filing of multiple postjudgment motions was improper and (2) even if the motions could be considered as a single attack on the February 11 final judgment, defendants nevertheless waived or forfeited their arguments by not objecting to the default order, not attending the prove-up hearing, and raising new legal theories for the first time in their motions for reconsideration. In her brief on appeal, Flores adds that defendants' motion to vacate was "insufficient to extend the time to appeal the judgement due to its failure to cite any relevant authority." Thus, Flores concludes that the September 2020 notices of appeal were untimely.

¶ 21    This court has a duty to consider its own jurisdiction and, if jurisdiction is lacking, we must dismiss the appeal. *In re Estate of York*, 2015 IL App (1st) 132830, ¶ 19. Whether jurisdiction exists is a question of law that we review *de novo*. *In re Estate of Aryeh*, 2021 IL App (1st) 192418,

¶ 21. Generally, a party has 30 days from the entry of a final judgment to file a notice of appeal. Ill. S. Ct. R. 303 (eff. July 1, 2017). However, the filing of a timely postjudgment motion attacking the judgment tolls the time for filing an appeal. *Id.* In such an instance, the notice of appeal must then be filed within 30 days after the circuit court enters an order disposing of the postjudgment motion. *Id.*

¶ 22      In this case, the final judgment was entered on February 11, 2020, well more than 30 days prior to the filing of defendants' first notice of appeal in September 2020. However, defendants filed their postjudgment motions on March 3, 2020, which was within 30 days of the final judgment. Moreover, defendants filed their notices of appeal within 30 days of the court disposing of the postjudgment motions on August 20, 2020. Thus, the appeal was timely filed so long as the March 3 motions were sufficient to toll the time for appeal.

¶ 23      As stated above, Flores, citing Illinois Supreme Court Rule 274 (eff. July 1, 2019), first suggests that the March 3 motions did not have a tolling effect because it is improper for a party to file successive postjudgment motions. Flores is correct that Rule 274 provides that "[a] party may make only one postjudgment motion directed at a judgment order that is otherwise final and appealable." In *Sears v. Sears*, 85 Ill. 2d 253, 259 (1981), our supreme court explained that the rationale behind the rule against successive postjudgment motions is to promote finality, *i.e.* to create "a time when the case in the trial court is really over and the loser must appeal or give up." The court went on to explain that "justice is not served by permitting the losing party to string out his attack on a judgment over a period of months, one argument at a time, or to make the first motion a rehearsal for the real thing the next month." *Id.* Thus, courts have interpreted the rule against successive postjudgment motions to simply mean that a party may not use a series of motions to extend the time for appeal beyond 30 days from the disposition of the first postjudgment

motion. *People v. Walker*, 395 Ill. App. 3d 860, 869 (2009); see also Sears, 85 Ill. 2d at 259 ("[S]uccessive post-judgment motions are impermissible when the second motion is filed more than 30 days after the judgment or any extension of time allowed for the filing of the post-judgment motion.").

¶ 24    Applying these principles to the present case, it is clear that the finality concerns posed by successive postjudgment motions are not implicated here. The "successive" motions in this case were both filed on the same day and within 30 days of the final judgment they attacked. The motions were also denied on the same day, and no other postjudgment motions were filed after that disposition. Thus, the circuit court properly considered them as a single attack on the February 11 judgment and did not allow defendant to extend proceedings in the court indefinitely.

¶ 25    Second, Flores contends that we lack jurisdiction because the arguments raised in defendants' postjudgment motions were all either waived or forfeited, primarily due to defendants' failure to object to the order of default and their subsequent failure to appear at the prove-up hearing. Without deciding whether defendants in fact waived or forfeited certain arguments, we find the issue does not affect our jurisdiction. Notably, Flores cites to no authority holding that this court lacks jurisdiction to consider waived arguments. Rather, we have explained that "the principles of waiver and forfeiture are binding on the parties but do not limit this court's jurisdiction." *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 948 (2010). Thus, even if we were to decide that defendants waived the arguments they raise on appeal, we would still have the jurisdiction to consider the circuit court's judgment.

¶ 26    Third, and finally, Flores asserts that defendants' March 3 motions, in particular the motion to vacate, do not satisfy the requirements to toll the time for appeal under Rule 303. The relevant statute here is section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2018)),

which governs postjudgment motions in civil cases decided without a jury. A motion qualifies as a proper postjudgment motion under section 2-1203 (and therefore tolls the time for filing a notice of appeal) if it requests one or more of the types of relief listed in section 2-1203. *Stanila v. Joe*, 2020 IL App (1st) 191890, ¶ 17. Among the types of relief authorized by section 2-1203 are "modification of the judgment" and "to vacate the judgment." 735 ILCS 5/2-1203 (West 2018). Similarly, Rule 303(a)(1) requires that a postjudgment motion be direct against the final judgment being attacked. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). In determining whether a postjudgment motion is directed against the judgment, a reviewing court must examine the substance of the motion rather than its caption. *Stanila*, 2020 IL App (1st) 191890, ¶ 23.

¶ 27    Here, defendants' motion to vacate requested the circuit court to "vacate the judgment of February 11, 2020." Defendants' motion to return vehicle requested that the circuit court "[o]rder Plaintiff to return the Vehicle to Defendant, as well as enter any other order this Court deems just." In other words, defendants' motions clearly sought the vacation and modification of the final judgment, both of which are forms of relief contemplated by section 2-1203.

¶ 28    Flores nevertheless maintains that the motion to vacate was insufficient because it was bereft of specific details and citations to authority. However, in *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 31-33 (2002), our supreme court interpreted Rule 303 and section 2-1203, explicitly rejecting the notion that they required any level of specificity in civil cases decided without a jury. Flores acknowledges *Kingbrook*, but attempts to distinguish it on the grounds that defendants "did not style the Motion to Vacate as one brought under 2-1203, 2-1301(e), or any other statute." However, notwithstanding the fact that the motion did not specifically list section 2-1203, that statute clearly governs here where we are faced with motions to vacate and modify a final judgment rendered without a jury in a civil case. Again, the key factor for court to examine in determining

whether a postjudgment motion tolls the time for filing an appeal is the nature of relief sought, rather than the technical form of the motion. *Stanila*, 2020 IL App (1st) 191890, ¶ 23.

¶ 29    Because defendants' postjudgment motions were timely and sought the proper kind of relief, we hold that they were sufficient to toll the time for filing an appeal. Additionally, defendants' notices of appeal were properly filed within 30 days after the circuit court's order disposing of the postjudgment motions. We therefore find that we have jurisdiction over this appeal, and deny Flores' motion to dismiss.

¶ 30                                  B. The Merits

¶ 31    Turning to the merits of the case, we note that defendants' brief on appeal is rather disjointed and, at times, difficult to follow. However, as best we can surmise, defendants argue that the court's judgment was against the manifest weight of the evidence because there was no basis for punitive damages. Defendants also appear to contend that the circuit erred in awarding Flores "even more than what [she was] originally seeking" by allowing her to retain the vehicle, which defendants call "an unwarranted additur." In response, Flores primarily contends that defendants have either waived or forfeited their ability to challenge the amount of the default judgment. She also argues that, forfeiture aside, the circuit court did not abuse its discretion in entering the default order or judgment.

¶ 32    Illinois Supreme Court Rule 219(c)(v) (eff. July 1, 2002) allows a circuit court to enter a default judgment against a party for failure to comply with the court's discovery orders. The court's decision on whether to impose a particular discovery sanction is reviewed for an abuse of discretion, meaning it will be reversed only where it is "arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Direct Auto Insurance Company v. Bahena*, 2019 IL App (1st) 172918, ¶ 35.

¶ 33    A reviewing court takes a three-step approach in determining whether an award of punitive damages was appropriate. Those steps are (1) whether punitive damages are available for the particular cause of action, (2) whether, using a manifest weight of the evidence standard, the defendants acted fraudulently or maliciously, and (3) whether the circuit court abused its discretion in imposing punitive damages. *Dubey, Public Storage, Inc.*, 395 Ill. App. 3d 342, 355 (2009). This standard gives great deference to decision made at the circuit court level due to the highly factual nature of the assessment of punitive damages. *Id.* at 358 " 'A judge's or jury's assessment of punitive damages will not be reversed unless the manifest weight of the evidence shows that the assessment was so excessive as to demonstrate passion, partiality, or corruption on the part of the decision-maker.' " *Id.* (quoting *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1145 (2004)).

¶ 34    As relevant here, the Consumer Fraud Act specifically authorizes a circuit court to award a prevailing plaintiff not only economic damages, but also "any other relief which the court deems proper," including punitive damages if the court determines that the defendants engaged in conduct that was "willful or intentional and done with evil motive or reckless indifference to the rights of others." 815 ILCS 505/10a (West 2018). Defendants do not necessarily contest that punitive damages are available in consumer fraud cases as a general matter, but rather contend that punitive damages were inappropriate in this particular case because there was no evidence that they acted willfully or maliciously. However, the allegations in Flores' complaint, which are deemed admitted by virtue of the default (*American Access Casualty Co. v. Griffin*, 2014 IL App (1st) 130665, ¶ 28), establish that Flores informed Luxury Motors employees multiple times that she wanted a vehicle with all-wheel drive, and that the employees in turn falsely assured her she was buying such a vehicle in order to make a sale. When Flores discovered that the vehicle she

purchased was not as represented, Luxury Motors was less than forthcoming in allowing her to get a refund or exchange the vehicle. Under these facts, we cannot say it was against the manifest weight of the evidence for the circuit court to conclude that defendants acted intentionally and with reckless indifference to Flores' rights. See *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 56 ("A ruling is against the manifest weight of the evidence only if an opposite conclusion is clearly evident.").

¶ 35    A larger problem for defendants, though, is that the record is completely devoid of any transcripts or bystander's reports for any hearings, including the February 11 prove-up hearing and the August 20 hearing on defendants' postjudgment motions. As such, we cannot determine what evidence was produced at those hearings in support of the court's judgment. Of course, it is well-established that the appellant has the duty to provide this court with a sufficient record to review any claims of error. *Cascade Builders Corp. v. Rugar*, 2021 IL App (1st) 192410, ¶ 27. Any doubts caused by the insufficient record must be resolved against the appellant. *Id.* Thus, even if we had doubts about the award of punitive damages in this case, we would still be required to uphold the circuit court's judgment.

¶ 36    As for defendants' point about *additur*, we note that, as defendants themselves seem to acknowledge in their brief, this is not an *additur* case. *Additur* occurs when a trial court increases the amount of damages awarded by a jury, usually with the defendant's consent and in order to avoid a new trial on grounds of inadequate damages. Black's Law Dictionary (11th ed. 2019). Here, the court did not increase a jury's award, as there was no jury in the first place. Defendants nevertheless assert that the court's award was "similar to an additur" and "should be treated as an additur." Their argument appears to be based on the idea that by allowing Flores to retain

possession of the non-all-wheel drive vehicle, the court essentially awarded her more than she originally sought in her complaint.

¶ 37    There are several problems with this argument. First, and foremost, the inadequate record prevents us from reviewing the circuit court's reasoning or the evidence upon which the judgment was based. Again, we must resolve all doubts caused by the inadequate record against defendants. Second, while Flores at one time sought a refund or the exchange of the vehicle she purchased, her complaint also requested "[a]ny and all other just and appropriate relief." Third, defendants cite no authority (and we are aware of none) for the proposition that a successful plaintiff under the Consumer Fraud Act is required to return the goods she purchased as a result of said fraud. Rather, as previously noted, the statute explicitly grants the circuit court the authority to award actual economic damages, punitive damages, or "any other relief which the court deems proper." 815 ILCS 505/10a (West 2018). As such, we find defendants' "*additur*" argument to be without merit.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court.

¶ 40    Affirmed.